THEODORE DUFOUR,

  Plaintiff,

 v.

STEVE MATRISCH, et al.,

  Defendants.

No. 18 CV 1269

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Plaintiff Theodore DuFour applied twice for a recovery permit from the Illinois Commerce Commission. The permit was required to conduct collateral repossessions under the Collateral Recovery Act, 225 ILCS 422/1 *et seq*. DuFour's application was denied both times due to his criminal history. DuFour brings this suit against Commission officers under 42 U.S.C. § 1983, alleging violations of his rights to due process, equal protection, and petition for redress of grievances and his right against double jeopardy. Defendants move to dismiss the complaint for a lack of jurisdiction and the failure to state a claim. The motion is granted in part, denied in part.

### I. Legal Standards

Defendants move to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A motion to dismiss under Rule 12(b)(1) argues that this court lacks subject-matter jurisdiction. Subject-matter jurisdiction "defines [the court's] power to hear cases." *Lightfoot v. Cendant Mortg. Corp.*, 137 S.Ct. 553, 560

(2017). Without subject-matter jurisdiction, the court has no power to hear the case and cannot go on to reach the merits. *See All. for Water Efficiency v. Fryer*, 892 F.3d 280, 287 (7th Cir. 2018). As the plaintiff asserting subject-matter jurisdiction, DuFour bears the burden of establishing it. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 589 (7th Cir. 2014).

A motion to dismiss under Rule 12(b)(6) is one on the merits of the case—it argues that the complaint "fail[s] to state a claim upon which relief can be granted." That is to say, even if all the facts alleged in the complaint were true, it would not plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because DuFour is pro se, I construe his complaint liberally and hold it to a less strict standard than a complaint drafted by lawyers (though it must still plausibly suggest a right to relief). *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). When considering a Rule 12(b)(6) motion to dismiss, I am limited to reviewing the complaint, "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (citation omitted).

In evaluating either type of motion to dismiss, I must assume that all of the facts alleged in the complaint are true and draw reasonable inferences from those facts in DuFour's favor. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007); *Iqbal*, 556 U.S. at 678–79. I am not required to accept the complaint's legal conclusions as true. *Iqbal*, 556 U.S. at 678.

## II. Background

The Illinois Collateral Recovery Act regulates "individuals and entities engaged in the business of collateral recovery for the protection of the public." 225 ILCS 422/5. One of its requirements is that collateral recovery agents employed by repossession agencies hold a valid recovery permit, specifically a "Class 'E' recovery permit," issued by the Illinois Commerce Commission. 225 ILCS 422/30(c), 422/75(e)(4). The Commission can refuse to issue a permit for a number of reasons, including violations of the act and criminal convictions of felonies, misdemeanors with dishonesty as an element, and crimes related to the collateral recovery profession. 225 ILCS 422/80(a). If a permit applicant has a criminal conviction of this kind, an administrative law judge holds an administrative hearing to help the Commission decide whether the applicant is "unfit by reason of conviction." Ill. Admin. Code tit. 92, § 1480.50(c). When the Commission decides to deny a permit application, it must notify the applicant in writing, along with a statement about the denial, the convictions the denial was based on, and a summary of the appeal process (or information about when the applicant can reapply). 225 ILCS 422/85(d). Defendants are Commission officials: Matrisch is the deputy executive director, Sheahan is the chairman, and Hinesheh is the ethics officer. [1] ¶¶ 4–6.[1]

Many of the following facts come from two Commission orders that defendants attached to their motion to dismiss and which I take judicial notice of. [18-1]. DuFour correctly points out that, under Rule 12(d), a motion to dismiss

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header at the top of filings.

3

relying on materials outside the pleadings must usually be turned into a motion for summary judgment, but there is a "narrow exception" for judicially-noticed public records. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997). This "allow[s] courts to avoid unnecessary proceedings when an undisputed fact in the public record establishes that the plaintiff cannot satisfy the 12(b)(6) standard." *Id.* I may take judicial notice of public records, including administrative records and findings, when the facts are "not subject to reasonable dispute." *Tobey v. Chibucos*, 890 F.3d 634, 647–48 (7th Cir. 2018); *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 n.1 (7th Cir. 2016). The Commission orders are public administrative records, and DuFour does not argue that they are inaccurate or inauthentic, so I take judicial notice of them. *See Oney v. Nennig*, 142 F.3d 440, 1998 WL 123114, at *1 (7th Cir. 1998) (unpublished table decision) (district court properly took judicial notice of documents "[b]ecause they [were] all matters of public record and [plaintiff] did not challenge the documents' authenticity or accuracy").

Plaintiff Theodore DuFour has been a recovery agent since 1999, and he applied for a recovery permit in December 2012. [1] ¶ 3; [18-1] at 2. A background check revealed that DuFour had criminal convictions that could result in the denial of his application, so an administrative hearing was held in front of an ALJ. [18-1] at 2. DuFour represented himself at the hearing. [18-1] at 2. The evidence focused on DuFour's criminal history, including his felony convictions of aggravated battery, illegal possession of a weapon, insurance fraud, and possession of a stolen vehicle.

[18-1] at 3–4. DuFour also had several misdemeanor convictions for battery, phone harassment, and trespass, which all stemmed from DuFour's work as a recovery agent. [18-1] at 4. In his testimony at the hearing, DuFour expressed remorse about his past and explained the strides he had made in turning his life around. [18-1] at 4. The owner of a repossession agency also testified on DuFour's behalf, stating that DuFour had turned his life around and was good at his job. [18-1] at 4–5. Ultimately, however, the Commission gave greater weight to DuFour's criminal record and denied DuFour's application for a recovery permit in August 2013. [18-1] at 6–7; [1] ¶ 9.

DuFour tried to reapply for a recovery permit in December 2013. [18-1] at 9. Again, his background check raised issues that resulted in a hearing in front of an ALJ, and DuFour represented himself. [18-1] at 9. DuFour's criminal history remained the same, but this time there were alternate grounds on which to base denial. DuFour initially represented that he had not violated the CRA, but he later admitted that he knowingly violated the CRA by participating in repossessions without a recovery permit. [18-1] at 11. So in February 2015, the Commission again denied DuFour's application, this time due to his criminal record, violations of the CRA, and lies to the Commission about whether he had ever violated the CRA. [18-1] at 12–13. The order denying this application was signed by Sheahan. [18-1] at 13.

According to the complaint, DuFour appealed the first denial of his recovery permit in September 2013, and a judge granted him a permit. [1] ¶ 10. But, he alleges, "prior employees" of the Commission "[overrode] the judge's decision and

5

revoked the recovery license with no possible appeal." [1] ¶ 10. Though I usually assume all the complaint's factual allegations are true, I do not have to do so when the allegations contradict judicially-noticed facts. *See* 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1363 (3d ed.) ("The district court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed."); *Radivojevic v. Daley*, 12 Fed.App'x 391, 392 (7th Cir. 2001) (affirming dismissal and noting that judicially noticed records "squarely contradict" the complaint's allegations); *Purnell v. McCarthy*, No. 14 C 2530, 2017 WL 478301, at *1 (N.D. Ill. Feb. 6, 2017). DuFour's allegations that he was issued a recovery permit that was later revoked are inconsistent with the Commission's orders.

The Commission orders show that DuFour was never granted a recovery permit. The 2015 order makes no mention of a recovery permit having been issued in 2013. [18-1] at 9–13. To the contrary, the Commission found that DuFour admitted to violating the CRA by performing repossessions "between January 1, 2013 and December 31, 2013 without a recovery permit." [18-1] at 12. DuFour has not suggested that the Commission orders are inaccurate in any way. Instead, his response brief contains statements that are consistent with the fact that he never held a recovery permit—he says that he understood from defendants' comments "that he would never get a recovery permit" and wonders how he is "unfit to obtain a permit," even though others have received them with worse criminal histories. [20] at 2. DuFour attached a letter to his complaint that he received from the president of a repossession agency, which says the Commission told the agency

6

president that DuFour's recovery permit was "revoked" and that "[i]t appears there is no appeal of this revocation so there is nothing further I can do for you." [1] at 5. But the letter's statements do not undermine the judicially-noticed facts from the Commission's orders any more than the allegations of the complaint do. Since DuFour does not deny that the facts in the Commission orders are true and accurate, neither the allegations in his complaint nor the statements in the attached letter can contradict them. So though DuFour bases his claims on the "revocation" of his recovery permit, I understand them to be based on the permit denial, as described in the Commission orders.[2]

III. Analysis

A. **Jurisdiction**

Subject-matter jurisdiction is the court's power to hear and decide a case. *Lightfoot*, 137 S.Ct. at 560. "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). The complaint correctly lists 28 U.S.C. § 1331 and 28 U.S.C. § 1343 as statutes that grant jurisdiction over DuFour's § 1983 claims. *See Abdullahi v. City of Madison*, 423 F.3d 763, 767 (7th Cir. 2005). Defendants' motion to dismiss for lack of jurisdiction is denied.

---

[2] Whether DuFour's recovery permit was revoked or denied does not affect the outcome of the motion. Either way, DuFour's complaint would be unable to state a claim, as explained below.

7

Defendants argue that this court nevertheless lacks subject-matter jurisdiction because DuFour did not exhaust his administrative remedies. Exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis removed) (citing *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). But § 1983 does not require nonprisoners to exhaust state judicial or administrative remedies. *See Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 500, 516 (1982) (collecting cites). That DuFour did not pursue state remedies may affect whether he can succeed on the merits of his claims, but it does not strip the court of its power to hear them.

Defendants are correct that some portions of DuFour's claims are barred by the Eleventh Amendment, but that is a merits argument too, not a jurisdictional one. *Indiana Prot. & Advocacy Servs. v. Indiana Family & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010). The Amendment is interpreted to generally "bar[ ] actions in federal court against a state, state agencies, or state officials acting in their official capacities." *Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007). But there are exceptions to this immunity. A state is not protected by Eleventh Amendment immunity if it has consented to being sued in federal court or if Congress has abrogated the state's immunity. *Id.* And sovereign immunity does not bar a plaintiff from suing state officials if the plaintiff is requesting prospective equitable relief for ongoing violations of law. *Id.* (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). DuFour's

claims for damages against defendants in their official capacities cannot survive, because Illinois has not consented to suit in federal court, *see* 745 ILCS 5/1, and Congress did not abrogate the states' immunity for § 1983 violations. *See Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012). Those claims are dismissed on the merits. DuFour's claims for damages against defendants in their individual capacities and claim for injunctive relief are not barred by the Eleventh Amendment.

### B. Sufficiency of the Complaint

DuFour brings his claims under § 1983, which "creates a 'species of tort liability' for 'the deprivation of any rights, privileges, or immunities secured by the Constitution.'" *Manuel v. City of Joliet, Ill.*, 137 S.Ct. 911, 916 (2017) (citations omitted). A § 1983 claim requires DuFour to allege that "(1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law." *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). DuFour claims that defendants deprived him of four rights—his rights to due process, petition for redress of grievances, and equal protection, and his right against double jeopardy.

#### 1. *Due Process and Petition for Redress*

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). To state a § 1983 procedural due process claim, DuFour must allege "(1) deprivation of a protected interest, and (2) insufficient procedural protections

9

surrounding that deprivation." *Cannici v. Vill. of Melrose Park*, 885 F.3d 476, 479 (7th Cir. 2018) (citation omitted). Defendants do not dispute that the denial of DuFour's recovery permit is a deprivation of a protected interest. Instead, they argue that DuFour was given ample process surrounding the denial. When deciding what process is due, courts balance three factors—"first, the private interest at stake; second, the risk of erroneous deprivation and the value, if any, of additional procedural safeguards; and third, the government's countervailing interests." *Simpson v. Brown Cty.*, 860 F.3d 1001, 1006 (7th Cir. 2017) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Generally, due process requires notice of the government action and an opportunity to be heard in response, though sometimes more procedural rights may be required for especially important private interests. *Id.*[3]

DuFour alleges that his recovery permit was denied "with no possible appeal," [1] ¶ 10, and that denial without an opportunity for appeal violated his due process rights. [1] ¶ 13. DuFour makes no allegation that any pre-deprivation procedures (that is, procedures before his recovery permit was denied) were inadequate, just that the lack of appeal after the denial deprived him of due process. Indeed, the Commission's orders show that DuFour was given the benefit of notice and an administrative hearing before his recovery permit applications were denied.

---

[3] To the extent DuFour's complaint contains a substantive due process claim, it is dismissed. "When there is an alleged violation of a specific constitutional provision, that provision should guide the court's analysis," not a substantive due process theory. *Hurt v. Wise*, 880 F.3d 831, 844 (7th Cir. 2018). *See also City of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998).

*See* [18-1] at 2, 9. So DuFour's claim is based on allegedly insufficient post-deprivation procedures, not pre-deprivation procedures.[4]

As an initial matter, though defendants do not argue it, "there is no federal constitutional right to an appeal." *Lynk v. LaPorte Superior Court No. 2*, 789 F.2d 554, 565 (7th Cir. 1986). If DuFour was given due process before the license was denied, then the Constitution did not require the Commission to give him more process after the denial. *See Ortwein v. Schwab*, 410 U.S. 656, 660 (1973) ("This Court has long recognized that, even in criminal cases, due process does not require a State to provide an appellate system."). Due process does not mean endless process. That being said, if a system of appeals is put in place, its procedures must meet due process and equal protection requirements. *See Evitts v. Lucey*, 469 U.S. 387, 393 (1985). But DuFour does not allege that there was something wrong with the appeals process, just that he did not get one.

Anyway, defendants argue that Illinois law did give DuFour the opportunity to appeal the denial of his permit, but DuFour chose not to. Indeed, the CRA says that "[a]ll final administrative decisions of the Commission are subject to judicial review under the Administrative Review Law and its rules." 225 ILCS 422/195. The

---

[4] For this reason, even if I accepted the complaint's allegation that DuFour was issued a permit that was later revoked (as opposed to the judicially-noticed facts that show DuFour's applications were denied), it would make no difference to the analysis. DuFour does not make any allegations that the pre-deprivation process he received before the alleged revocation was lacking. Even if he had, DuFour would have been unsuccessful, because he alleges that Commission employees "overrode" the ALJ's issuance of his permit by revoking it, suggesting that the employees were not following established procedures but rather acting in a "random and unauthorized" way. A claim based on "random and unauthorized acts by state officials . . . only requires a meaningful post-deprivation remedy." *Cannici*, 885 F.3d at 479.

11

Commission orders both conclude with a statement saying that the order constitutes a final decision subject to administrative review. [18-1] at 7, 13. The Seventh Circuit has "found time and again that the Illinois Administrative Review Act provides sufficient post-deprivation relief." *Cannici*, 885 F.3d at 480. So DuFour had the opportunity to appeal the denial of his recovery permit, and though he seems not to have pursued that option, "we do not allow a plaintiff to claim that she was denied due process just because she chose not to pursue remedies that were adequate." *Veterans Legal Def. Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003).

Nor does DuFour allege that defendants somehow prevented him from exercising his statutory right to appeal the denial. Although not alleged in the complaint, DuFour says in his brief that he was advised that he would "never get a recovery permit by the ICC no matter what administrative remedies and/or state court actions he pursued." [20] at 2. DuFour does not attribute those statements to anyone in particular, but even if defendants told him that, the statements presented no actual interference or obstacle to the process that was available to DuFour. At a status hearing held in this case on April 26, 2018, DuFour also said he had tried to file for judicial review in state court, but he was told the court did not know what he was talking about and the Commission would not return DuFour's calls about it. Those allegations are not in the complaint or briefing, but anyway, the court's actions (or inaction) cannot be the basis for a due process claim against defendants.

DuFour's claim for a violation of his First Amendment right to petition for redress fails for similar reasons. *See Ortwein*, 410 U.S. at 666 n.5 (discussion

12

finding no violation of due process "demonstrates that appellants' rights under the First Amendment have been fully satisfied").

### 2. Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment 'is essentially a direction that all persons similarly situated should be treated alike.'" *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1050 (7th Cir. 2017). Often, it is used "as a guard against state and local government discrimination on the basis of race, national origin, sex, and other class-based distinctions." *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). To state an equal protection claim based on this kind of discrimination, DuFour must allege that he is a member of a protected class and similarly situated to members of an unprotected class, defendants treated him differently from the similarly situated members of the unprotected class, and defendants acted with discriminatory intent. *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000). But the complaint is missing each one of these requirements, including that he is a member of a protected class or he was treated differently from someone similarly situated.

The Equal Protection Clause also protects "against purely arbitrary government classifications, even when a classification consists of singling out just one person for different treatment for arbitrary and irrational purposes." *Geinosky*, 675 F.3d at 747. An equal protection claim of this sort is often called a "class-of-one" claim and requires plaintiffs to "allege that state actors lacked a rational basis for singling them out for intentionally discriminatory treatment." *Miller v. City of Monona*, 784 F.3d 1113, 1120 (7th Cir. 2015) (citation omitted). "[E]ven at the

pleadings stage, 'all it takes to defeat a class-of-one claim is a *conceivable* rational basis for the difference in treatment.'" *Id.* (citation omitted) (emphasis in original). DuFour's brief suggests this is the type of claim he was after—he argues that the Commission has granted recovery permits to "others who have violent backgrounds, multiple home invaders, and sexual offenders," so it does not make sense that DuFour, a "non-violent offender" whose crimes are in the past, was denied a permit. [20] at 2. There are many conceivable rational reasons to treat DuFour differently from those other kinds of offenders, including, for example, that some of DuFour's offenses of conviction "relate directly to his work as a repossessor." [18-1] at 6. Though DuFour considers other crimes like sex offenses to be more serious than his own, it would be rational for the Commission to treat him differently based on crimes that occurred while DuFour was carrying out exactly the kind of work the permit would give him license to do.

### 3. Double Jeopardy

"The Double Jeopardy Clause provides that no 'person [shall] be subject for the same offence to be twice put in jeopardy of life or limb.'" *Turner v. Glickman*, 207 F.3d 419, 427 (7th Cir. 2000) (citation omitted). This protects against receiving multiple criminal punishments for committing the same crime, but it does not protect against receiving other kinds of civil "sanctions," even though they might be commonly called "punishment." *Id.* Revocation of a recovery permit that DuFour already had would not be a criminal punishment, much less denying him one to begin with. *See Hudson v. United States*, 522 U.S. 93, 104 (1997) ("'[R]evocation of a

14

privilege voluntarily granted' . . . 'is characteristically free of the punitive criminal element.'" (citation omitted)).

>    4.   *Other Arguments: Personal Involvement, Statute of Limitations, Absolute Immunity, and Attorneys' Fees*

The complaint does not sufficiently plead that defendants were personally involved in the allegedly unconstitutional conduct, which is required for them to be individually liable under § 1983. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). A defendant is personally involved "if the constitutional violation occurs at a defendant's direction or with her knowledge or consent." *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018). The complaint does not allege that defendants were personally involved in the conduct that allegedly violated DuFour's rights. According to the complaint, DuFour's recovery permit was denied by "prior employees" of the Commission, not defendants. [1] ¶ 9. And the complaint does not attribute any other conduct to defendants. To the extent DuFour's theory is that defendants were high-level officials who were responsible for the actions of those who worked under them, that theory is not viable. Supervisors must have been personally involved beyond the failure to supervise, meaning they must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (citation omitted). In his response to the motion to dismiss, DuFour states that defendants "all knew of the conduct and condoned and approved it." [20] at 2. It is unclear whether the conduct DuFour is referring to is that described in the previous paragraph (in which he says he was advised he would never get a recovery

15

permit) or all the conduct alleged in the complaint. Without more specificity, DuFour's statement in his brief cannot fix the lack of personal involvement alleged in the complaint, which provides an alternative ground to dismiss his claims against defendants in their individual capacities.

The statute of limitations bars § 1983 claims stemming from the permit denial.[5] The statute of limitations for § 1983 claims in Illinois is two years. *Tobey*, 890 F.3d at 645. The clock starts running "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017) (citation omitted). It is "when a plaintiff knows the fact and the cause of an injury . . . even though the full extent of the injury is not then known or predictable." *Id*. (citations omitted). DuFour should have known that the Commission denied his recovery permit (for the second time) when the order was issued on February 25, 2015, [18-1] at 13, but he did not file this lawsuit until February 20, 2018, about a year too late. [1].

Sheahan is absolutely immune from DuFour's claims. Defendants argue that Sheahan was acting as a judge when he denied DuFour's recovery permit as the Commission's chairman. "Absolute immunity protects members of quasi-judicial adjudicatory bodies when their duties are functionally equivalent to those of a judge

---

[5] Because complaints do not have to anticipate affirmative defenses (like the statute of limitations), complaints usually should not be dismissed at this stage based on them. *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017). "But when it is 'clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law,' dismissal is appropriate." *Id*. (citation omitted).

16

or prosecutor." *Heyde v. Pittenger*, 633 F.3d 512, 517 (7th Cir. 2011). Absolute immunity does not protect actions that are "bureaucratic and administrative" or lack procedural formalities and protection. *Brunson v. Murray*, 843 F.3d 698, 710 (7th Cir. 2016). But the denial of a recovery permit is more judicial, accompanied by procedural protections like notice, a hearing, and an opportunity for appeal. *See* Ill. Admin. Code tit. 92, § 1480.50(c); 225 ILCS 422/85(d), 422/195; *Brunson*, 843 F.3d at 710–14 (absolute immunity applies to actions of Illinois liquor commissioners when they revoke liquor licenses).

Lastly, even if DuFour had been able to succeed on his claims, he would not have been able to collect attorneys' fees, because he is not an attorney. *See Smith v. DeBartoli*, 769 F.2d 451, 453 (7th Cir. 1985).

### 5. *Futility of Amendment*

I should "freely" give plaintiffs opportunities to amend their complaints "when justice so requires," Fed. R. Civ. P. 15(a)(2), but I do not have to do so when the complaint's problems are unfixable. *See Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) ("[D]istrict courts have broad discretion to deny leave to amend . . . where the amendment would be futile."). If DuFour had the chance to replead his allegations in an amended complaint, he would not be able to resolve all the issues that defendants pointed out in their motion, including the statute of limitations issue. *See London v. RBS Citizens, N.A.*, 600 F.3d 742, 747 n.5 (7th Cir. 2010) (amendment is futile when "the amended complaint could not survive a motion to dismiss"). Because DuFour will not be able to amend his complaint to state a plausible federal claim, his claims are dismissed with prejudice.

## C. Motion for Attorney Representation

Shortly after briefing on the motion to dismiss concluded, DuFour requested attorney representation. [22]. "[T]here is no constitutional or statutory right to court-appointed counsel in federal civil litigation," *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007) (en banc), but I can request that an attorney represent a party who cannot afford counsel. 28 U.S.C. § 1915(e)(1). In deciding whether to do so, I must consider whether DuFour has "made a reasonable attempt" to get counsel and, if so, whether DuFour is competent to litigate the case himself, given its difficulty. *Pruitt*, 503 F.3d at 654. DuFour says he contacted a few places to try to get an attorney on his own and was unsuccessful because he lacked the funds to retain them. That effort is likely enough to get to the second step of the process, but DuFour has been competent to litigate the case himself, particularly at this early stage in the case. DuFour has a high school education, [22] at 2, and he has demonstrated an ability to understand and respond to the arguments raised by defendants. DuFour noted on his motion for attorney representation that he has never been represented by a court-appointed attorney in a federal case, [22] at 1, but it appears he may have been appointed attorneys in a previous case. *See, e.g.*, Minute Order, *DuFour v. Coutee, et al.*, No. 97 CV 960 (N.D. Ill. Jul. 15, 1998), ECF No. 18. Though perhaps DuFour required counsel in that case, the quality of his self-representation here has demonstrated his competency in this one.

## IV. Conclusion

For the reasons explained above, defendants' motion to dismiss, [15], is granted in part, denied in part. The complaint is dismissed with prejudice. Other pending motions, [22] [23] [24], are terminated as moot. Enter judgment and terminate civil case.[6]

ENTER:

*/s/ Manish S. Shah*

Manish S. Shah
United States District Judge

Date: August 27, 2018

---

[6] This is a final order terminating this case in this court. If DuFour wishes to appeal, he must file a notice of appeal within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1)(A). If DuFour seeks leave to proceed in forma pauperis on appeal, he must file a motion for leave to proceed in forma pauperis in this court and should use the form available at http://www.ca7.uscourts.gov/forms/pauperis.pdf. *See* Fed. R. App. P. 24(a)(1).